Sean Hecker (*pro hac vice*)
Derek Wikstrom (*pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
shecker@debevoise.com
dwikstrom@debevoise.com

Nanci L. Clarence (SBN 122286)
Josh A. Cohen (SBN 217853)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
nclarence@clarencedyer.com
jcohen@clarencedyer.com

Attorneys for Defendant
ROBERT BOGUCKI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT BOGUCKI,<br><br>　　　　Defendant. | CASE NO. CR-18-0021 CRB<br><br>**ROBERT BOGUCKI'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS**<br><br>Date:　　　March 9, 2018<br>Time　　　11:00 a.m.<br>Courtroom:　6<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I. The Government Failed to Refute the Overwhelming Circumstantial Evidence that the MLAT Request was Pretextual ................................................................................. 2

II. The Court Should Not Permit Government Abuse of Section 3292 ..................................... 7

III. The Government Did Not Satisfy Its Evidentiary Burden by Attaching the Unverified MLAT Request to its Sworn Declaration ............................................................. 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Alvarez-Machain v. United States*,
    96 F.3d 1246 (9th Cir. 1996) ................................................................................................ 10

*United States v. Atiyeh*,
    402 F.3d 354 (3d Cir. 2005) .................................................................................................. 10

*United States v. DeGeorge*,
    380 F.3d 1203 (9th Cir. 2004) ................................................................................................ 7

*United States v. Gerace*,
    997 F.2d 1293 (9th Cir. 1993) ................................................................................................ 5

*United States v. Hallahan*,
    756 F.3d 962 (7th Cir. 2014) .................................................................................................. 4

*United States v. Heredia*,
    768 F.3d 1220 (9th Cir. 2014) ................................................................................................ 4

*United States v. Jenkins*,
    633 F.3d 788 (9th Cir. 2011) .................................................................................................. 9

*United States v. Lo*,
    839 F.3d 777 (9th Cir. 2016) .................................................................................................. 5

*United States v. Lyttle*,
    667 F.3d 220 (2d Cir. 2012) ................................................................................................... 6

*United States v. Meador*,
    138 F.3d 986 (5th Cir. 1998) .................................................................................................. 7

*United States v. Midgley*,
    142 F.3d 174 (3d Cir.1998) .................................................................................................. 10

*United States v. Peglera*,
    33 F.3d 412 (4th Cir. 1994) .................................................................................................... 5

*United States v. Pollard*,
    959 F.2d 1011 (D.C. Cir. 1992) ............................................................................................. 5

*United States v. Trainor*,
    376 F.3d 1325 (11th Cir. 2004) ........................................................................................ 8, 9

*United States v. Yemitan*,
    70 F.3d 746 (2d Cir. 1995) ..................................................................................................... 5

**STATUTES**

28 U.S.C. § 1746 ................................................................................................................. 9

18 U.S.C. § 3282 ................................................................................................................. 1

18 U.S.C. § 3292 ......................................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Crim. P. 12 ............................................................................................................. 1

Fed. R. Crim. P. 16 ............................................................................................................. 3

Defendant Robert Bogucki respectfully submits this reply memorandum of law in response to the United States' Response in Opposition to Defendant Robert Bogucki's Motion to Dismiss ("Opposition" or "Opp.") and in further support of his Motion to Dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12.[1]

## PRELIMINARY STATEMENT

The government's Opposition does not dispute that the last act alleged in the Indictment took place on October 4, 2011. Nor does it dispute that, absent the tolling order at issue here, the five-year statute of limitations under 18 U.S.C. § 3282(a) applies and the Indictment is time-barred. Nor does the government dispute that it knew before August 2, 2016 that it would receive all of the information it was requesting, including information located abroad, directly from Barclays – without the need for an MLAT – by virtue of Barclays' ongoing cooperation. And, remarkably, the government is silent as to why it failed to disclose that material fact in the MLAT Request or the tolling application and, instead, led the court to believe that the MLAT Request was sent because evidence was located abroad, and could not be obtained (or had not already been obtained) from Barclays in the United States.

That material omission, and the other surrounding circumstances, make this the rare case where the evidence strongly suggests that the government submitted a frivolous MLAT Request in order to obtain additional time rather than evidence of criminal activity; in other words, that the government abused the process set forth in 18 U.S.C. § 3292. Instead of attempting to substantively address Mr. Bogucki's concerns on the facts – refusing to produce documents to Mr. Bogucki or even disclose them to the Court for *in camera* review – the government dismisses them as "conjecture," Opp. at 13, and urges the Court not to consider them.

Undoubtedly, MLAT requests serve important investigative functions. That does not mean that MLAT requests are immune from judicial scrutiny, as the government claims, even where

---

[1] Capitalized terms used in this brief but not defined have the meanings assigned in the moving brief, and references to exhibits refer to the exhibits attached to the Declaration of Derek Wikstrom in Support of Defendant Robert Bogucki's Motion to Dismiss.

circumstances strongly suggest the request was not motivated by a reasonable belief that evidence was needed from a foreign country. The government ignores the case law establishing that frivolous or abusive MLAT requests cannot be used to toll a statute under Section 3292, *see* Mot. at 7-8. Yet that precedent provides ample basis for the Court to exercise its authority to prevent the government's apparent abuse of process by, at the very least, permitting further evidentiary development.

Of course, as noted in the moving papers, the Court need only reach this issue if it finds that the government's tolling application satisfied Section 3292's evidentiary burden. But the government cannot save its facially deficient declaration by pointing out that it attached, but did not swear to the accuracy of, the unverified MLAT Request. That failure of evidentiary proof is an independently sufficient basis to dismiss the Indictment with prejudice.

## ARGUMENT

### I. The Government Failed to Refute the Overwhelming Circumstantial Evidence that the MLAT Request was Pretextual

The circumstantial evidence here strongly suggests that the government submitted its MLAT Request for a simple reason: it needed more time to investigate. *See* Mot. at 7-9. If that is accurate, it represents a clear abuse of process. Where an MLAT request is patently pretextual or frivolous – where every indication is that the government had no real interest in purported evidence located abroad but rather used the MLAT for the purpose of tolling a statute on the verge of expiration – the government cannot meet its statutory burden. That is the case here as evidenced by the government's inability to refute or explain away the overwhelming circumstantial evidence suggesting that the MLAT Request was pretextual.

The government starts by arguing that Mr. Bogucki's pretext claim is "unsupported by the record." Opp. at 7. But there is only the barest record, because the government has stonewalled Mr. Bogucki's efforts to obtain limited evidence about the MLAT Request. It refused repeated requests for discovery into communications with Barclays about producing documents in the

United States and the government's decision to submit the MLAT Request and tolling application.[2]  See Mot. at 11-12.  And though it is in possession of contemporaneous documents, and could easily have provided such documents or a sworn statement in support of its Opposition, the government did not do so.  Instead, it offers only post-hoc justifications from trial counsel.  That, itself, strongly suggests that Mr. Bogucki's pretext claim is well-founded.

The "record," such as it is, thus consists solely of the materials the government submitted to toll the statute.  The timing and substance of those materials suggest that the government did not reasonably believe it needed evidence from abroad; rather, it reasonably believed it needed to buy time.  With respect to timing, the government claims that it did not have an immediate need to toll the statute in August 2016, because it ultimately charged a conspiracy running through October 2011 in the Indictment and suspected at the time of its application that the conspiracy may have continued thereafter.  Opp. at 10-11.  But the investigation was plainly running short of time in August 2016.  And at the time, the investigation was focused on ███████████ ███████████████████████████████████████.  See Ex. 2 at 4-10.  A case based solely on that transaction thus had to be charged before ████████████ under the applicable five-year statute.

As for the substance, the most telling circumstantial evidence of abuse is the fact that the vast majority of the MLAT Request was directed to Barclays.  Over the course of multiple pages, the MLAT Request listed a variety of documents sought from Barclays; single paragraphs requested documents from each of the other two entities – ███████████████████████████

---

[2] The Opposition addresses only the latter category of documents, and supplies no basis for refusing to produce communications with Barclays or its counsel regarding tolling and discovery. Those communications are not privileged or otherwise immune from Rule 16 discovery.  As for the purely internal DOJ communications, neither work-product protection nor Rule 16 prevents production for *in camera* review by the Court in the circumstances present here.  Moreover, this discovery and the requested evidentiary hearing will not impose significant burdens on the parties or the Court.  The requests for discovery are narrowly tailored to a short date range and likely seek production of just a single custodian's emails, and an evidentiary hearing would require just one witness – Ms. Hall – and could likely be completed in an hour or two at the Court's convenience.

▇▇▇▇▇▇▇▇. *See* Ex. 2 at 16-19. One would not know this from the government's brief, which barely mentions, let alone explains, the extensive requests for documents from Barclays or the government's material omission, from both the United Kingdom and Judge Seeborg, that Barclays was providing, in the United States, the information sought from the United Kingdom without any need for an MLAT Request.

In its Opposition, the government confirms that Barclays was fully cooperating with its investigation. But it suggests that it included requests to Barclays in its MLAT Request anyway because, even though Barclays was, in fact, cooperating with the DOJ, and providing information without any need for an MLAT Request, Barclays was not under a legal obligation to do so. Opp. at 9 n.5. The government's legal analysis, however, is patently flawed.

The government suggests that the cooperation provisions of the plea agreement – memorialized in paragraphs 17 and 18, standalone provisions that were not part of the proposed sentence[3] – did not become effective until Barclays was sentenced to probation seven months after the agreement was executed by the parties. *Id.* That position would come as a surprise to countless criminal defendants, not to mention United States Attorney's Offices and federal courts, who heretofore have understood that the terms of plea agreements are binding as of execution. The imposition of the sentence is not a condition precedent. *See, e.g., United States v. Heredia*, 768 F.3d 1220, 1233-34 (9th Cir. 2014) (finding pre-sentence breach of plea agreement where government made certain arguments in its sentencing submission); *United States v. Hallahan*, 756 F.3d 962, 973 (7th Cir. 2014) (applying contract law principles and holding that a defendant's pre-

---

[3] Barclays' Plea Agreement is attached to the Supplemental Declaration of Derek Wikstrom as Exhibit 11. Under its terms, Barclays agreed to "cooperate fully and truthfully with the United States in the investigation and prosecution of this matter" involving "the purchase and sale of the EUR/USD currency pair, or any other currency pair, in the [foreign exchange] Spot Market, or any foreign exchange forward, foreign exchange option or other foreign exchange derivative, or other financial product (to the extent disclosed to the United States)," as well as in various other investigations. *See id.* ¶¶ 17-18. Although the sentencing agreement provisions were "subject to" compliance with this cooperation requirement, *id.* ¶¶ 12-14, the cooperation obligation was contained in standalone provisions of the contract.

sentence conduct can breach a plea agreement). While the recommended sentence agreed to by the parties was not legally binding until the court accepted and imposed it, the government's position that the other terms of the agreement were non-binding ignores not only longstanding norms of federal criminal practice, but also basic principles of contract interpretation. *See, e.g.*, *United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016) ("Plea agreements . . . are essentially contracts that we interpret according to contract principles." (citing *United States v. Gerace*, 997 F.2d 1293, 1294 (9th Cir. 1993))); *see also United States v. Yemitan*, 70 F.3d 746, 747 (2d Cir. 1995); *United States v. Peglera*, 33 F.3d 412, 413-14 (4th Cir. 1994); *United States v. Pollard*, 959 F.2d 1011, 1022 (D.C. Cir. 1992).

The narrow requests the government does defend in the Opposition were for ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓, which the government effectively concedes it already had. *See, e.g.*, Opp. at 9 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). The lengths to which the government goes in attempting to explain why it sought from the United Kingdom documents to which it already had ready access through Barclays, and had no interest in actually pursuing (and has not in fact pursued[4]) abroad, only add to the mounting circumstantial evidence that the MLAT Request was a well-disguised sham. The government asserts that it needed to seek ▓▓▓▓▓▓▓▓ records in order to "reconstruct a timeline of when [the trader] was able to trade and communicate with other traders." Opp. at 10. But that explanation is, to put it kindly, nonsense. The "timeline" was already well-established. As just noted, Barclays' cooperation obligation required it to produce to the government "all documents, factual information, and other materials, wherever located." Ex. 11, Barclays Plea Agreement ¶ 17. When it submitted the MLAT Request, the government already had, or knew it would receive from the bank, information establishing not only ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] The government concedes that it still has not received the requested records via the MLAT Request. Opp. at 10 n.6.

█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████.

The government's other justifications for seeking the ████████ records are even more strained. The notion that proving ███████████████████ was necessary to establish the use of interstate wires, Opp. at 8, is silly: the government was investigating whether Barclays traders in New York and London defrauded HP treasury personnel in California in connection with foreign-currency trades. The use of interstate wires was never in doubt. Neither was venue, *see* Opp. at 8, though one wonders how the question whether ████████████ ████████ during the relevant period could possibly affect the propriety of venue in the Northern District of California. As for the government's claim that it needed to determine whether ████ ████████████████████████████████████████████████████████████████ ████████ Opp. at 10, that information was not even sought from ██████████ in the MLAT Request. In sum, even the government's post-hoc rationalizations, which benefit from the DOJ's having spent an additional year and a half investigating, cannot offer a plausible, non-pretextual justification for the MLAT Request. Because there is none.

Contrary to the government's assertion, Mr. Bogucki does not contend that the government must establish that the requested evidence was strictly necessary. *See* Opp. at 7. Section 3292 contains no such requirement, and Mr. Bogucki is not asking the Court to impose one. But this is not the *Lyttle* case, where a defendant attempted to argue that tolling was unavailable where "the government had sufficient evidence upon which to present an indictment to the grand jury, even without the benefit of the [foreign] evidence." *United States v. Lyttle*, 667 F.3d 220, 225 (2d Cir. 2012) ("Grand juries are not required to vote on indictments as soon as they have probable cause."). The lack of necessity does not invalidate the tolling order, but it is strong circumstantial evidence that here, unlike in *Lyttle*, the government was not genuinely seeking the "benefit" of foreign evidence. While the government is entitled to collect evidence and run down leads before it charges a case, that is not what it was doing with the MLAT Request at issue here. It was,

instead, attempting to abuse the MLAT process simply to buy itself more time. The Court would not do violence to Section 3292 by prohibiting this apparent abuse of the statute.

## II.     The Court Should Not Permit Government Abuse of Section 3292

Unable to persuasively rebut the inference that its MLAT Request was pretextual, the government resorts to urging the Court not to look behind it. The government never actually claims that its motivation in submitting the MLAT Request was not to toll the statute. Indeed, the section of the government's Opposition entitled "The Government's Tolling Application Was Not 'Pretextual'" fails to fulfill its promise. Rather than make assurances to the Court about its motivations, the government claims that by questioning its intent the Court would be taking an "extraordinary step," and that Your Honor "need not reach the defendant's argument." Opp. at 7. The government is left arguing not that defendant's arguments are factually incorrect, but instead that they are "speculat[ive]," "misdirected," rely on "the benefit of hindsight," and are "unsupported by the record" that it has refused to produce. Opp. at 7-9.

The government argues, at bottom, that its motivations are insulated from scrutiny by this or any Court. In its telling, once it submits an MLAT Request, it is immune from inquiry into the possibility that it abused the process provided by Congress to facilitate gathering evidence from foreign countries. But that is not the law, as the Ninth Circuit has explained in no uncertain terms: "[D]istrict courts retain sufficient oversight powers to prevent any abuse of § 3292 by the government." *United States v. DeGeorge*, 380 F.3d 1203, 1214 (9th Cir. 2004) ("*DeGeorge II*"). The statute is not "an affirmative benefit to prosecutors, suspending the limitations period, pending completion of an investigation, whenever evidence is located in a foreign land. It is not a statutory grant of authority to extend the limitations period by three years at the prosecutors' option." *Id.* at 1215 (quoting *United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998)); *see also* Mot. at 7-8.

The Opposition conspicuously fails to address this case law. The government has no answer to it. But this Court should not ignore the significant circumstantial evidence of pretext and thereby allow what appears to be a significant abuse of Section 3292.

### III. The Government Did Not Satisfy Its Evidentiary Burden by Attaching the Unverified MLAT Request to its Sworn Declaration

Yet even if the government's tolling application were not the pretext that it was, it fails for the separate and independent reason that it did not clear the evidentiary hurdles in Section 3292. Specifically, the application failed to establish the second element of Section 3292's evidentiary standard – a reasonable belief that evidence of a crime was located abroad.[5]  Mot. at 9-11.

According to the government, the Court should overlook the absence of any reliable, sworn statement by former prosecutor Sarah M. Hall regarding the government's "reasonable belief" that evidence related to the investigation was located abroad, because the MLAT Request itself "is incorporated into the Declaration by reference" and "notes in multiple places that the evidence is likely located in the United Kingdom." Opp. at 3 (citing Ex. 7 ¶ 6).  This argument simply ignores the paragraph it relies upon, which never "incorporated" the MLAT Request, "by reference" or otherwise.  Instead, it stated only that "[a] copy of the request is attached as Exhibit 1." Ex. 7 ¶ 6. The government, with no apparent basis in law or fact, conflates this with a verification of the MLAT Request's contents.  *See* Opp. at 5-6.

Despite the government's suggestion that this argument elevates form over substance, the substance is quite clear: as the government notes, the reason the Eleventh Circuit required sworn declarations in *Trainor* was because oaths under penalty of perjury "impress upon the witness the danger of criminal punishment." Opp. at 5 (quoting *United States v. Trainor*, 376 F.3d 1325, 1332 (11th Cir. 2004)).  It is beyond serious debate that, as written, the oath in Ms. Hall's declaration would not subject her to criminal liability if the MLAT Request contained misstatements.  True enough, Ms. Hall *could have* sworn that the MLAT Request's contents were accurate, and thereby verified them.  But she did not do so, and merely attaching the request to her declaration did not have that effect.  What Ms. Hall did, instead, was decline to verify the MLAT Request and

---

[5] The first element of Section 3292 requires that the government prove by a preponderance of the evidence that it submitted an official MLAT request.  18 U.S.C. § 3292(a)(1).  Even after it responded to the motion, the government still has not produced any evidence establishing that the official request was actually submitted.

conspicuously omit from her declaration the key factual assertions included in the application, which was otherwise a copy-and-paste job. *See* Mot. at 5. If anything can be gleaned from the sworn declaration, it is that the declarant *did* consider the risks of verifying certain facts under oath, and omitted key factual assertions as a result.

Moreover, the factual assertions contained within the unverified MLAT Request that the government claims bear "badges of reliability," Opp. at 5, in no way evidence a reasonable – or even plausible – belief that the materials related to Mr. Bogucki were located abroad. The government, for instance, asserts that it ███████████████████████████ ████████████████████████ Opp. at 3. A seemingly logical statement, but for the fact that the evidence sought (1) was in no way related to Mr. Bogucki, (2) was not plausibly evidence of a crime, and (3) was easily obtained from Barclays directly pursuant to its legal obligations, without need of a MLAT Request.[6] The government in fact obtained the evidence sought in connection with the ████████████ directly from Barclays, which produced █ ██████████████████████████. *See* Mot. at 4 n.2.

On these facts, the government's attempt to distinguish *Trainor* falls flat. *See* Opp. at 4-5. The government would reduce *Trainor*, and *United States v. Jenkins*, 633 F.3d 788, 798 (9th Cir. 2011), which adopted *Trainor* in this Circuit, to the proposition that any declaration will do. But the question is not whether the government filed *some* document containing an oath under 28 U.S.C. § 1746. As the *Trainor* court noted, it could not simply rely on the request submitted to the foreign government, because that request could have been "frivolous or simply made in error." *Trainor*, 376 F.3d at 1334. Ms. Hall's declaration attached the MLAT Request, but it never verified it, or said anything to so much as suggest that it was not frivolous. That represents a failure to attain the "minimum threshold of reliability" required. *Id.* at 1336.

---

[6] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Finally, the government argues in a footnote that it relied on the tolling order in good faith, and thus is entitled to equitable tolling. *See* Opp. at 6 n.2. But the government cannot rely in good faith on a tolling order obtained in bad faith. And even if the Court decides this motion based on the facial insufficiency of the application, equitable tolling would be unavailable. As the Third Circuit has explained, the government is not entitled to equitable tolling when it relies on an order under Section 3292 in good faith, because its reliance (by definition, given the *ex parte* nature of the proceedings) is not induced by the defendant. *See United States v. Atiyeh*, 402 F.3d 354, 367 (3d Cir. 2005). So even if the government relied on the tolling order in good faith, this would not be the "rare situation where equitable tolling is demanded by sound legal principles as well as the interest of justice." *Id.* (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir.1998) and *Alvarez-Machain v. United States*, 96 F.3d 1246, 1251 (9th Cir. 1996) (internal quotation marks omitted)).

## **CONCLUSION**

For the reasons set forth above, defendant Robert Bogucki respectfully requests that the Court dismiss the Indictment with prejudice or, at a minimum, order further factual development in the form of discovery and an evidentiary hearing.

Dated: February 26, 2018                    Respectfully submitted,

                                            DEBEVOISE & PLIMPTON LLP


                                            By   /s/
                                               Sean Hecker
                                               Derek Wikstrom


                                            CLARENCE DYER & COHEN LLP


                                            By   /s/
                                               Nanci L. Clarence
                                               Josh A. Cohen

                                            Attorneys for Defendant Robert Bogucki