**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

```
UNITED STATES OF AMERICA,    )
                             )
         Plaintiff,          )
                             )
   VS.                       )      NO. CR 18-021 CRB
                             )
Robert Bogucki,              )
                             )
         Defendant.          )
_____)
```

San Francisco, California
Friday, March 9, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:       UNITED STATES DEPARTMENT OF JUSTICE
                     1400 New York Avenue NW
                     Washington, DC   20005
                BY:  **JUSTIN WEITZ, ESQ.**
                     **BRIAN YOUNG, ESQ.**

                     UNITED STATES ATTORNEY'S OFFICE
                     450 Golden Gate Avenue
                     San Francisco, California   94102
                BY:  **LLOYD A. FARNHAM, ESQ.**

For Defendant:       DEBEVOISE AND PLIMPTON, LLP
                     919 Third Avenue
                     New York, NY   10022
                BY:  **SEAN HECKER, ESQ.**
                     **DEREK WIKSTROM, ESQ.**

                     CLARENCE DYER & COHEN, LLP
                     899 Ellis Street
                     San Francisco, CA   94109
                BY:  **JOSH A. COHEN, ESQ.**
                     **ADAM F. SHEARER, ESQ.**

Reported By:  Vicki Eastvold, RMR, CRR, Official Reporter

**Friday - March 9, 2018**                                    **11:00 a.m.**

**P R O C E E D I N G S**

---oOo---

**THE CLERK:** Calling Criminal Action CR 18-0021, USA versus Robert Bogucki.

**MR. WEITZ:** Morning, Your Honor, Justin Weitz on behalf of the United States.

**MR. HECKER:** Good morning, Your Honor. Sean Hecker, Derek Wikstrom, for Mr. Bogucki who's to my left.

**MR. COHEN:** Josh Cohen and Adam Shearer for Mr. Bogucki, as well. Good morning, Your Honor.

**THE COURT:** Good morning.

**MR. YOUNG:** Good morning, Your Honor. Brian Young for the United States.

**MR. FARNHAM:** Morning. Lloyd Farnham appearing for Robert Leach.

**THE COURT:** Morning. Well, appearing for Robert Leach. He's not actually a party, is he, in this action?

**MR. FARNHAM:** He's not. I'm not representing him today. I'm appearing for the government in place of Robert Leach.

**THE COURT:** I appreciate that. Mr. Leach is well occupied before the court.

So I have reviewed the papers. And let me tell you what

1   my present thinking is; and then if I can get some comments
2   from the parties.
3       The argument that is being advanced by the defense is that
4   the statute of limitations has run but for the MLAT application
5   and the granting of the MLAT application which extended the
6   statute of limitations by operation of the statute.
7       And it is there -- as I understand it -- their position
8   that the granting of the MLAT, based upon the applications that
9   were made, was either erroneous or inappropriate or -- I mean,
10  I don't know quite what the words are, but should not have been
11  granted because the reasons justifying the MLAT are -- let's
12  see what would be the right word -- I guess pretextual is the
13  right word.  That's their argument.
14      The government takes the position, one, they're not
15  pretextual; and, two, even if the MLAT was granted erroneously,
16  a subject that they don't think the Court should inquire into,
17  the MLAT was obtained by virtue of a good faith application.
18  And, therefore, not unlike Fourth Amendment jurisprudence it's
19  not susceptible to a challenge.
20      Have I got that right?
21      **MR. WEITZ:**  Yes, Your Honor.
22      **THE COURT:**  So in looking at it I tried to figure out,
23  I tried to follow the arguments, and it seemed to me the
24  following:
25      The issue of using Fourth Amendment jurisprudence to an

application of the statute of limitations is actually a confusion of the underlying rationale for both. And I don't know that there's a disagreement as to that, but I'll tell you what my thinking is.

A, the Fourth Amendment and the suppression under the Fourth Amendment jurisprudence is based upon the fact -- and the exclusionary rule -- is based upon the fact that the courts have decided that they want law enforcement to act in a particular way, a way that they believe to be constitutionally mandated. And that failure to do so has to have consequences. And the consequence, the remedial or prophylactic effect, is to suppress the evidence.

Now, there's an exception to that because a search can occur, even though constitutionally impermissible if, in fact, the police officer is acting in good faith. And we call it the *Leon* exception or something along that line.

So you say, Why is there an exception? You say, Well, there's an exception because if the purpose of the Fourth Amendment jurisprudence is to require peace officers to conform to constitutional standards, and the peace officer who is involved in the search believed and had a good faith reasonable belief that he was complying with constitutional standards, then to apply the exclusionary rule doesn't make sense. That's in basket number one, okay?

So we put that, if that's correct -- and of course I think

it's correct -- but if it's correct, we'll put that aside just for the moment.  Now we'll talk about the statute of limitations which I believe is totally different.

What is the statute of limitations?  A statute of limitations is a determination by the Congress of the United States that no prosecution can be brought after a certain period of time because it's unfair to the defendant.  Notwithstanding whether the defendant did X, Y or Z, statute of limitations is to protect the right overall of a defendant.

Okay.  So it has nothing to do with good faith -- I mean, it has less to do with good faith exemptions than not.  And a typical example would be let's assume that the police believe, law enforcement believes, that the statute runs on X date.  You say, Well, why do you believe that?  And he says, Because of all of this that happened.  So you say, you know, that's good faith.  Absolutely.  You thought it was X, but it's actually Y.  It's X minus Y.  It's Z.  Okay?  It's some earlier date.

I don't think you can argue, well, if the peace officers, police, law enforcement, believed that the statute of limitations ran a particular day, and they had that belief in good faith, therefore the statute of limitations is extended that period of time.  I don't think so.  Because the statute of limitations is not geared directly to law enforcement activities.  It's geared to protect the rights of a defendant in having what's called a timely adjudication of the matter.

1    So I think those two jurisprudences, if I use the word
2    correctly, don't necessarily meld.  And the examples that one
3    gives, and the government gave, in applying one in the
4    situation of the other, the Court believes to be inappropriate.
5    Not a posit to the issue that the Court has to decide.
6    Nevertheless, there are some similarities which are
7    significant -- and may be significant.  For example, that a
8    judge rule gave, signed, an MLAT application would by operation
9    of law extend the statute of limitations.  That's what Congress
10   wanted done.  And Congress said, Look, we're going to make an
11   exception to the normal statute of limitations rule because of
12   the obstacles that the government faces in trying to obtain
13   evidence that is not immediately available, or available within
14   the jurisdiction of law enforcement in the United States.  Say,
15   well, that makes sense.  You know, while it may run contrary to
16   what a statute of limitations is designed to do.
17   It's an exception that one can say makes sense in the
18   overall balancing of policy considerations in terms of how
19   prosecutions are conducted.
20   Okay.  So the question is now before this Court whether
21   the applications in the facts in this case warrant the tolling
22   that occurred in connection with the statute of limitations.
23   That's what I presently think.
24   And to that end, the Court is inclined to hold an
25   evidentiary hearing in order to allow the parties to establish

1  one way or the other on a record whether the MLAT was
2  appropriately obtained -- when I say "appropriately," by the
3  way, I'm not -- I want to be careful not to color it in a
4  pejorative or otherwise way.  I need to know what the facts
5  are.  And whatever the facts are, whatever they may be, I then
6  can form certain conclusions or findings which may or may not
7  demonstrate one thing or the other.  I just don't know.  It's
8  very hard to do it on what I call a cold record.  That is, just
9  a matter of declarations.
10      So, it is my inclination to set the matter for an
11 evidentiary hearing, to permit discovery going to this issue.
12 That is, what did the government know at the time they applied
13 for the MLAT?  What was presented to the Court?  I think that's
14 a matter of record, whatever was presented to the Court.  And
15 -- but what did they know, what did they have, with respect to
16 -- with respect to their request for the MLAT?  Because I think
17 that that may be of some significance.
18      So, having said all of that, do you have a position you
19 want to address to the Court?
20      **MR. WEITZ:**  Yes, Your Honor.  The government has set
21 its position forward clearly in its papers.  We understand the
22 inclination of the Court in terms of an evidentiary hearing.
23      What I will say, Your Honor, is there's no basis going
24 beyond the four corners of the application for the tolling
25 order.  There's no example that defendant has proffered of when

1  a court has gone and looked at the pretext, as they put it.
2  The reasons behind why a prosecutor made a strategic decision.
3       Obviously, if the Court wishes us to have an evidentiary
4  hearing, we'll do that and provide whatever discovery the Court
5  feels is appropriate in this case.  But there's really no basis
6  for going beyond what's in that application.
7           **THE COURT:**  Is there ever?  Is there ever?  Let's look
8  at Fourth Amendment jurisprudence.  You want to?  Because
9  that's what you like.  What about a *Franks* hearing?  We do that
10 all the time.
11      Now -- we do that all the time.  We look beyond the
12 document.  I mean, if you're right -- which you're not -- I
13 don't think you are -- but if you're right, you'd never
14 challenge anything.  There would be no way to challenge an
15 MLAT.  It would be -- you could put anything in it.  Stuff it
16 with anything.  And if it meets the test for the judge -- you
17 know, if it just sort of drips of probable cause or rationale,
18 well, that's the end of it even though maybe it contains false
19 information.
20      I'm not saying it does.  So, I mean, I want to be careful
21 here.  I'm just saying as to your argument about just stop at
22 the document that, I think, is somewhat of a novel approach.
23          **MR. WEITZ:**  The distinction is, Your Honor, that
24 there's no allegation here of intentional or reckless false
25 representations in the original application.

1         Now, if this were the *Franks* context and there was an
2    allegation that there were deliberate misrepresentations made
3    in order to deceive the Court in issuing that original
4    warrant -- or in this case tolling order -- that would be a
5    different situation.
6         Here the question isn't whether those representations were
7    correct.  The question is whether those representations were
8    made because of a motivation in the mind of an individual
9    prosecutor.  And the government submits that's not appropriate
10   for an evidentiary hearing.
11            **THE COURT:**  I thought the argument is that the
12   representations were incomplete.  And that in order to give a
13   balanced view to the court that had to issue the MLAT, there
14   was certain information that was not contained in the affidavit
15   of the application.  I thought that's what they're saying.
16            **MR. WEITZ:**  The government -- I'll let Mr. Hecker
17   speak for his client.
18            **THE COURT:**  He probably can.
19            **MR. WEITZ:**  And I'll defer to him on that and to his
20   papers.  But I will say that the things that Mr. Hecker points
21   out, or that the defendant points out, are areas where he says
22   something is not sworn.  Or, he says something is not complete.
23   Your Honor, I don't believe anything in there actually arises
24   to a misrepresentation, certainly not a material one.  And I
25   think there's a reason that what Mr. Hecker wants is us to look

1  into the question of what the prosecutor thought.
2      Now I think if we want to have an evidentiary hearing or
3  discovery that specific representations were made in that
4  application, Your Honor, the government would see that as
5  something that might be more amenable or more in line with what
6  the existing case law and the statutes say.
7      But this isn't about misrepresentations and that's not
8  what the defendant is looking for.  The defendant is looking to
9  get into the mind of the prosecutor as to the strategic
10  internal decision she made to seek an MLAT in August of 2016.
11      He's doing so based on what he calls strong circumstantial
12  timing.  That is not enough.  It wouldn't be enough to get a
13  *Franks* hearing, but it's certainly not enough to get a novel
14  hearing on the issue of whether the prosecutor was motivated by
15  some ill pretext in seeking an MLAT.
16      **MR. HECKER:**  Your Honor's correct that we're
17  suggesting that much more was going on here.  And it is not
18  simply a matter of the timing.  The timing, of course, is
19  interesting because the MLAT request and the tolling
20  application were made on August 2; and the statute of
21  limitation on the crime they were investigating at the time was
22  going to run two weeks later.
23      What we're suggesting is that the prosecutor who was then
24  on the case misled Judge Seeborg.  Specifically, the court did
25  not know that the information that was sought in the MLAT from

1  Barclays was being produced by Barclays pursuant to a legal
2  obligation under a plea agreement.  The court did not know that
3  the records relating to one trader's travel to London was in
4  the possession of the prosecutor at the time the MLAT was
5  submitted.
6     It is a remarkable set of facts, candidly, and we are
7  absolutely raising questions about what they're calling
8  strategy, but what we think would be abuse of a process.
9     The Court -- there is plenty of authority in the Ninth
10 Circuit to suggest that 3292 does not exist to allow the
11 government to extend the statute of limitations any time
12 they're willing to make a frivolous application for information
13 that they can point out that they're going to -- they're
14 willing to say was overseas.
15    That's not what 3292 is there for.  It is there to allow
16 the government additional time in a context where the
17 information isn't available here.  The classic example is the
18 Swiss bank records which you simply can't get here.
19    This is not that case.  This is a case where the
20 government was willing to file an MLAT to obtain information
21 that it had and knew it was getting.  And that's clear already
22 from the record even without the evidentiary hearing.
23    We agree with the Court's instinct on this that an
24 evidentiary hearing makes sense.  The government could have but
25 chose not to produce contemporaneous records that would

1  undermine our theory here.  They could have but chose not to
2  submit an affidavit from the prosecutor who made the
3  declaration at the time in support of the MLAT application.
4  They chose not to.
5       All of those things cause us to believe our instinct about
6  what happened here is right.  But the idea that a court can't
7  look behind it on the basis that on its face it's sufficient
8  and, candidly, we think -- and we've argued in our papers --
9  that on its face it was insufficient.  Because the declaration
10 itself, interestingly, failed to include a couple sentences
11 that were in the application.  The declaration.  Which is the
12 only piece of evidence that was submitted by the prosecutor who
13 was then on the case.  Carefully deleted the sentence that said
14 she had a reasonable belief that the evidence was overseas.
15      Now, maybe that's just carelessness.  Possible.  Or it
16 could be that she was a little uncomfortable because she knew,
17 for example, that on June 20, six weeks before she filed the
18 MLAT, she was sitting on the hotel bill that she was asking for
19 in the MLAT.  She had it in her email inbox.  That's a
20 remarkable set of facts.
21      So we absolutely think there's a basis for looking behind
22 it.  I candidly think there's enough in the record to suggest
23 already that there's overwhelming evidence this was pretextual
24 and it was an abuse of process.  And the fact that the
25 government's response is not to engage on the facts but to tell

1  the Court you can't look behind it I think speaks volumes.
2      **THE COURT:**  Anyway, we're going to move beyond that
3  because I'm not going to find that it's pretextual.  I'm not
4  going to -- I'm going to find at this point that I, one,
5  disagree with the government that you can't look behind the
6  affidavit.  I think you can.  You do it in Fourth Amendment
7  jurisprudence.  I admit you have to have some cause to do it.
8  I get *Franks* motions all the time.  All the time.  And I deny
9  them all the time, as my reputation may precede me in that
10 regard.
11    But nevertheless, there is a showing that has to be made.
12 And I believe the defense has made the showing that raises a
13 serious question as to whether or not the affidavit -- the
14 declaration supporting it -- was accurate in material respects.
15    So I'll leave it at that, because I don't have to go any
16 further today, and set this matter for evidentiary hearing with
17 the right of the defense to conduct discovery consistent with
18 the inquiry that the Court must make.  Okay.
19     **MR. HECKER:**  Thank you, Your Honor.
20     **THE COURT:**  So I don't know -- that's a little vague.
21 I'll give you that.  But I don't know that I have to set the
22 parameters.  What I usually do is allow the parties to
23 negotiate parameters.  And if they fail to do so, or if they
24 fail to reach an agreement, you can come back here and I'll try
25 to work it out.

1    But, look, everybody is experienced in this area.  And no
2 one wants to upset the Court.  Especially them, because they
3 have to come back in front of me all the time.  Well, so does
4 the government, for that matter.  But you came out from
5 Washington?
6          **MR. WEITZ:**  Yes, Your Honor.
7          **THE COURT:**  You ought to thank me.  Washington's
8 horrible.  You can hardly get there.
9          **MR. WEITZ:**  I hope to have many more opportunities to
10 come here to northern California, Your Honor.
11         **THE COURT:**  We welcome you.  And very nice to have you
12 here.  We'll try to set it at an appropriate season and so
13 forth that will be consistent with good travel.
14      But I guess you're from New York?
15         **MR. HECKER:**  Correct, Your Honor.
16         **THE COURT:**  You really owe me a debt of gratitude.
17 Weather in New York is horrendous.
18      Anyway, when do you want to -- how much time do you want
19 to deal with this issue?
20         **MR. WEITZ:**  So let me raise two quick issues, Your
21 Honor.  First is that I think the defendant is going to have to
22 comply with the department's *Touhy* regs, regulations, in order
23 to get certain discovery.
24         **THE COURT:**  Well, that's a question whether you want
25 to insist on --

1    **MR. WEITZ:**  Sorry, Your Honor?
2    **THE COURT:**  I think that's a question of whether you
3    want to insist on it.  If you insist on it, you insist on it.
4    You have that right.
5    **MR. WEITZ:**  Unfortunately, it's not my call, Your
6    Honor.  It's the attorney general.
7    **THE COURT:**  Whose call is it?
8    **MR. WEITZ:**  It's way above my pay grade, Your Honor.
9    I don't think it will take a long time, but it is something
10   that I think we should keep in mind.
11   **THE COURT:**  If it's above your pay grade, I assume
12   that there will be an insistence on following this process.
13   **MR. WEITZ:**  I think that's correct, Your Honor.
14   We also just wanted to let the Court know -- we've
15   informed the defendant of this as well -- we are considering
16   seeking a superseding indictment under a ten-year statute of
17   limitations theory.  We have not yet decided whether we're
18   going to do that, but we just wanted the Court to be aware of
19   that before --
20   **THE COURT:**  And, again, with all superseding
21   indictments you have your right to seek it, to obtain it, and
22   then there we are.  But what I think you're suggesting is that
23   that then would moot the MLAT inquiry, is that right?  Is that
24   what you're saying?
25   **MR. WEITZ:**  For all intents and purposes I believe it

would, Your Honor. I mean, the Court could still rule on it and deal with the issue.

**THE COURT:** I mean, you know, let's get practical here. I think that this will take -- the inquiry may take devotion of resources of the defense, of the prosecution, and of the Court. If that's all unnecessary or mooted by a superseding indictment with a different statute of limitations -- and I'm not encouraging you to do it -- but I think you have to make an election. I mean, I would appreciate your making an election sooner rather than later. May or may not be to the liking of the defense, but it is to the liking of the Court that since I'm in my work avoidance mode that you come to that decision sooner rather than later.

**MR. WEITZ:** Yes, Your Honor.

**THE COURT:** I don't know what to say about that.

**MR. HECKER:** What I would say about it is they did give us a heads up that they may be pursuing a very novel theory under the FIRREA statute to apply a ten-year statute of limitations on these facts. We think there would be litigation about that because I actually think there would be good arguments that it wouldn't apply. So I don't know that it would moot the issue unless the government's prepared to rest entirely on that ten-year theory and give up on this one. But that could be a choice the government would have to make.

**MR. WEITZ:** I can't answer that right now, Your Honor.

1  I think if a superseding indictment is returned by the grand
2  jury we can approach that at that time.  But I do hear what
3  Your Honor is saying about the Court's resources, and we'll
4  make a decision expeditiously.
5       **THE COURT:**  Okay.  All right.
6       **MR. HECKER:**  Just one other point, Judge, because I
7  want to preserve the record.
8       I think there would be a very good argument the government
9  waived any attempt to apply ten year statute of limitations.
10 They wouldn't be charging a new crime; they would just be -- it
11 would be a different way of trying to get a ten year statute of
12 limitations.  So we would take the position they waived the
13 right to do that by not raising it before now.
14      **THE COURT:**  But that's not before me.  It's a couple
15 of steps away.  And let's see what happens.
16      So anyway, dates.  When do you want to come back here for
17 a hearing given the *Touhy* regulations, given the decisions you
18 have to make, given any discovery that's going to take place.
19      **MR. HECKER:**  Your Honor, because we don't actually
20 know what this *Touhy* process is going to entail, and I believe
21 we would need to arrange for the availability of a witness who
22 is no longer working for the justice department -- the former
23 prosecutor --
24      **THE COURT:**  Who is that, by the way?
25      **MR. HECKER:**  Her name is Sarah Hall.  My instinct

1  would be to set it down for maybe the beginning of May or late
2  April just to make sure we have enough time to review the
3  discovery and make sure the witness is available.
4         **THE COURT:**  Okay.  So let's set it for the first week
5  of May.  Let's set it -- we'll set it for hearing.
6         **THE CLERK:**  May 3?
7         **THE COURT:**  Well, May 3 is a Wednesday, right?
8         **THE CLERK:**  It's a Thursday.
9         **THE COURT:**  I'm looking at the wrong year?  May 3.
10 Yes.  It's Thursday, May 3.  Thank you.  May 3 at 9:00 a.m.
11        **MR. HECKER:**  Thank you, Judge.
12        **THE COURT:**  And obviously, if you agree on dates or
13 something, I'll revisit that.  And a motion is pending so I
14 think that excludes time.
15        **MR. WEITZ:**  That's correct, Your Honor.
16        **THE COURT:**  Thank you.
17                              ---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Friday, March 23, 2018


_____/s/Vicki Eastvold_____

Vicki Eastvold, RMR, CRR
U.S. Court Reporter