Sean Hecker (*pro hac vice*)
Derek Wikstrom (*pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
shecker@debevoise.com
dwikstrom@debevoise.com

Nanci L. Clarence (SBN 122286)
Josh A. Cohen (SBN 217853)
CLARENCE DYER & COHEN LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
nclarence@clarencedyer.com
jcohen@clarencedyer.com

Attorneys for Defendant
ROBERT BOGUCKI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>ROBERT BOGUCKI,<br><br>   Defendant. | CASE NO. CR-18-0021 CRB<br><br>**ROBERT BOGUCKI'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS**<br><br>Date:         June 18, 2018<br>Time          1:30 p.m.<br>Courtroom:   6 |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I. Pursuant to Rule 12, the Superseding Indictment Fails as a Matter of Law ......................... 2

II. The Government's Allegations Do Not Establish an Effect on a Financial Institution ........................................................................................................................... 4

    A. Routine Assumption of Trading Risk Did Not Expose Barclays to a New or Increased Risk of Loss ................................................................................. 5

    B. The Investigation and Declination Cannot Establish an Effect on Barclays ............. 6

    C. Mere Status as Trading Counterparties is Insufficient to Allege an Effect on Financial Institutions A and B ................................................................................ 8

III. The Government Conceded that a Five-Year Statute Applies Here, Thereby Waiving Reliance on FIRREA's Extended Limitations Period .......................................... 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*United States v. Agne*,
   214 F.3d 47 (1st Cir. 2000) .................................................................................................. 7

*United States v. Bouyea*,
   152 F.3d 192 (2d Cir. 1998) ............................................................................................. 4, 9

*United States v. Carollo*,
   2011 WL 3875322 (S.D.N.Y. Aug. 25, 2011) ................................................................ 8, 11

*United States v. Covington*,
   395 U.S. 57 (1969) ............................................................................................................... 2

*United States v. Esterman*,
   135 F. Supp. 2d 917 (N.D. Ill. 2001) ................................................................................... 5

*United States v. Ghavami*,
   23 F. Supp. 3d 148, 163-64 (S.D.N.Y. 2014) ...................................................................... 8

*United States v. Grass*,
   274 F. Supp. 2d 648 (M.D. Pa. 2003) .................................................................................. 5

*United States v. Hall*,
   20 F.3d 1084 (10th Cir. 1994) ............................................................................................. 2

*United States v. Jensen*,
   93 F.3d 667 (9th Cir. 1996) ................................................................................................. 3

*United States v. Jones*,
   542 F.2d 661 (6th Cir. 1976) ............................................................................................... 3

*United States v. Kim*,
   184 F. Supp. 2d 1006 (N.D. Cal. 2002) ........................................................................... 2, 3

*United States v. Mullins*,
   613 F.3d 1273 (10th Cir. 2010) ....................................................................................... 4, 9

*United States v. Olano*,
   507 U.S. 725 (1993) ........................................................................................................... 11

*United States v. Pelullo*,
   964 F.2d 193 (3d Cir. 1992) ......................................................................................... 4, 7, 9

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*,
   831 F. Supp. 2d 779 (S.D.N.Y. 2011) ...................................................................... 7, 8, 11

*United States v. Serpico*,
    320 F.3d 691 (7th Cir. 2003) .................................................................................................. 8

*United States v. Shortt Accountancy Corp.*,
    785 F.2d 1448 (9th Cir. 1986) ................................................................................................ 2

*United States v. Stargell*,
    738 F.3d 1018 (9th Cir. 2013) ................................................................................................ 5

*United States v. Ubakanma*,
    215 F.3d 421 (4th Cir. 2000) .................................................................................................. 6

**STATUTES**

12 U.S.C. § 1851 .......................................................................................................................... 6

18 U.S.C. § 215 ............................................................................................................................ 4

18 U.S.C. § 656 ............................................................................................................................ 4

18 U.S.C. § 982 .......................................................................................................................... 11

18 U.S.C. § 1005 .......................................................................................................................... 4

18 U.S.C. § 1006 .......................................................................................................................... 4

18 U.S.C. § 3282 ........................................................................................................................ 11

18 U.S.C. § 3292 ................................................................................................................. *passim*

**OTHER AUTHORITIES**

12 C.F.R. § 351.4(b)(2)(ii) ........................................................................................................... 6

Federal Rule of Criminal Procedure 12 ............................................................................ 1, 2, 3, 10

H.R. Rep. No. 101-54 (1989) ....................................................................................................... 4

Defendant Robert Bogucki respectfully submits this reply memorandum of law in response to the United States' Response in Opposition to Defendant Robert Bogucki's Motion to Dismiss ("Opposition" or "Opp.") and in further support of his Motion to Dismiss the Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12.[1]

**PRELIMINARY STATEMENT**

In an attempt to salvage its stale claims, the government obfuscates both its own charges, which it asserts (without any basis in the Superseding Indictment) include market manipulation, and the nature of this motion, which it portrays as an attempt to resolve purportedly complex factual disputes. But there is nothing complex or disputed about the facts central to this motion.

Here is what, according to the government, gave rise to the indictment: Having positioned itself to complete its acquisition of Autonomy without needing the foreign-exchange ("FX") options it had previously obtained, Hewlett-Packard ("HP") contracted with Barclays to "unwind" the options it did not need. In connection with the unwind, Mr. Bogucki, in his capacity as an employee of Barclays, made purported misrepresentations to HP that Barclays was not trading ahead of the unwind (or failed to disclose trading to HP while under a duty to do so), when, in fact, Barclays was making trades that had the effect of making the bank's options book "short" prior to dealing with HP. As a result, says the government, HP made less money on the sale of the options it unwound than it would otherwise have made.

That is the government's case. It is not a case about illegal trades. It is not a case about market manipulation. And it is not a case about fraud on any bank.

There is no dispute that the allegedly unlawful conduct occurred more than five years ago. To avoid the consequences of that undisputed fact, and having now conceded that it can no longer rely on the tolling order it had obtained, the government has pivoted to the theory that Mr. Bogucki's alleged misrepresentations "affect[ed] a financial institution," triggering FIRREA's

---

[1] Capitalized terms used in this brief but not defined have the meanings assigned in the moving brief, and references to exhibits refer to the exhibits attached to the Declaration of Derek Wikstrom in Support of Defendant Robert Bogucki's Motion to Dismiss.

extended statute of limitations. *See* 18 U.S.C. § 3293(2). The problem with this theory is that it is legally invalid. The purported "effects" the government conjures do not remotely pass muster under FIRREA.

For the reasons set forth in the moving brief and herein, the Court should find that the indictment is time-barred and that the charges against Mr. Bogucki must accordingly be dismissed.

## ARGUMENT

### I. Pursuant to Rule 12, the Superseding Indictment Fails as a Matter of Law

Federal Rule of Criminal Procedure 12(b)(1) provides that a defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The government's claim that the defendant cannot "assert[] a defense as part of a motion to dismiss," Opp. at 6, thus runs afoul of the unequivocal language of the rule. As this Court has long recognized, Rule 12(b) "permits pre-trial consideration of any defense which is capable of determination without the trial of the general issue."[2] *United States v. Kim*, 184 F. Supp. 2d 1006, 1009 (N.D. Cal. 2002) (quoting Rule 12 Advisory Committee Notes). This motion raises just such a defense: the government's "affect[ing] a financial institution" theory relies on facts that are not subject to dispute, and it fails as a matter of law. Where, as here, the validity of a defense can be determined without resolving factual disputes, dismissal is appropriate. *See United States v. Covington*, 395 U.S. 57, 60 (1969); *see also United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) ("A pretrial motion is generally capable of determination before trial if it involves questions of law rather than fact." (internal quotation marks omitted)); *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (noting that a district court may dismiss an indictment pretrial for insufficient evidence when the facts are essentially undisputed); *United*

---

[2] In *Kim*, this Court dismissed various counts, including wire fraud, on the basis that a conviction required a breach of an underlying duty, and that no duty existed as a matter of law. 184 F. Supp. 2d at 1012. The government's wire fraud claims here similarly require it to establish a duty; Mr. Bogucki vigorously disputes the existence of any duty here, and intends to file a motion to dismiss on that basis if the Court finds that the Superseding Indictment is not time-barred.

*States v. Jones*, 542 F.2d 661, 665 (6th Cir. 1976) (recognizing appropriateness of district court's ruling on pretrial motion to dismiss indictment because "the facts surrounding the alleged offense were virtually undisputed and trial of the substantive charges would not substantially assist the Court in deciding the legal issue raised by the motion to dismiss the indictment").

This motion is not, as the government suggests, a "premature attempt to litigate a factual issue." Opp. at 6. Mr. Bogucki, for purposes of this motion only, presumes the truth of the principal factual assertions supporting the government's "affecting" theory:

- Barclays entered into options trades to "pre-hedge" the HP unwind, such that it had a "short" option position before HP traded (Opp. at 9);
- Barclays incurred legal expenses as a result of the government's investigation, including expenses for its own counsel and counsel for certain employees (*id.*);
- The government declined to prosecute Barclays in connection with that investigation, and the bank and the government signed a letter memorializing that declination in which Barclays agreed to disgorge approximately $12 million, which represented "certain of Barclays' profits from the conduct at issue"[3] (*id.*; *see also* Ex. 3 at 2); and
- Financial Institutions A and B entered into options trades with Barclays during the relevant period, and were FDIC-insured (Opp. at 11-12).

At this stage, the question for this Court is whether the government's factual allegations, assuming they are true, would as a matter of law permit a finding that Mr. Bogucki's conduct "affect[ed] a financial institution" for purposes of Section 3293(2). *See United States v. Jensen*, 93 F.3d 667, 669 (recognizing that when considering a "pretrial motion to dismiss, we must presume the truth of the allegations in the charging instruments" (citations omitted)); *Kim*, 184 F. Supp. 2d at 1015 (taking as true the allegations in the indictment, and dismissing counts of securities and wire fraud under Rule 12(b)). For the reasons explained in Mr. Bogucki's motion to

---

[3] This morning, the government produced an amendment to the Declination confirming that the disgorged funds would be placed in escrow for twelve months, and then transferred to the U.S. Treasury if the funds are not used in connection with any settlement between Barclays and HP.

dismiss and discussed below, the government's allegations fail as a matter of law to establish an effect on Barclays or Financial Institutions A and B.

## II. The Government's Allegations Do Not Establish an Effect on a Financial Institution

The parties agree that Congress enacted FIRREA at a particular historical moment, in the midst of a financial crisis that warranted an extended limitations period for frauds against financial institutions. *See* H.R. Rep. No. 101-54, at 464 (1989), *as reprinted in* 1989 U.S.C.C.A.N. 86, 260. The government urges the broadest possible reading of the statute, arguing that it applies to any "conduct that might, even if tangentially, affect financial institutions and their stakeholders."[4] Opp. at 13. But that sentiment conveniently ignores the myriad court holdings that "tangential" effects are insufficient, and that courts must impose reasonable limits on the definition of "affect." *See United States v. Mullins*, 613 F.3d 1273, 1278 (10th Cir. 2010) ("[T]here may be some point where the 'influence' a defendant's wire fraud has on a financial institution becomes so attenuated, so remote, so indirect that it cannot trigger the ten-year limitations period because it does not in any meaningful sense 'affect' the institution."); *United States v. Bouyea*, 152 F.3d 192, 195 (2d Cir. 1998) (the effect on a financial institution must be "sufficiently direct"); *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992) (the effect of a fraud cannot be "unreasonably remote").

Even if the Court were to accept the government's untenably broad reading, the government's FIRREA theory relies on intentional obfuscation of the "conduct" that must cause the requisite effect. The government alleges that Mr. Bogucki committed fraud by making misstatements or omissions *to HP*, not to any financial institution. HP, not any bank, was the

---

[4] The government notes in support of this broad reading that "Congress set a ten-year statute of limitations for a variety of crimes that have the potential to impact FDIC-insured institutions." Opp. at 10. Yet the crimes it cites uniformly involve conduct that is directed at, and thus directly affects, financial institutions. *See* 18 U.S.C. § 1005 (taking certain actions with an intent to defraud, or to receive property from, a financial institution), 18 U.S.C. § 1006 (making a false statement to a financial institution in an application), 18 U.S.C. § 656 (embezzlement of bank funds), 18 U.S.C. § 215 (solicitation or receipt of a bribe by a bank employee or agent).

purported victim of the alleged fraud.  The government cannot draw a plausible line between alleged false statements to HP, on the one hand, and an effect on a financial institution on the other.  Under the government's own theory, the alleged misstatements to HP did not *cause* Barclays to engage in options trading, nor did they *cause* Financial Institutions A and B to trade with Barclays and thereby suffer any "effect."

The government's various "affecting" theories are discussed in turn.

### A. Routine Assumption of Trading Risk Did Not Expose Barclays to a New or Increased Risk of Loss

The government first claims that Barclays was "affected by the charged criminal conduct" because it was "exposed to risk involved in the unwind," as the bank's trading caused its options book to be "short" and therefore "subject to the whims of [the] market."  Opp. at 9.  There is no factual dispute that Barclays took a trading position – functionally equivalent to accumulating inventory – in anticipation of counterparty demand from HP.  The question is whether Mr. Bogucki's alleged misstatements *caused* Barclays to take that position.

Under the government's own theory, the answer to this question is no.  Mr. Bogucki is not alleged to have made misstatements that led Barclays to trade; rather, he is alleged to have misled HP about trades that Barclays had already made.  Indeed, that is the fundamental premise of the government's prosecution: by concealing Barclays's trades, Mr. Bogucki purportedly deprived HP of material information and depressed the financial return to HP.  *Barclays* was not the entity that was exposed to a new or increased risk of loss; *HP* was.  And HP is not a financial institution.

Even if the trading had not preceded the alleged fraudulent conduct, rather than being caused by it, it would still not constitute a "new or increased risk of loss" for purposes of FIRREA.  *See United States v. Stargell*, 738 F.3d 1018, 1022 (9th Cir. 2013).  As multiple courts have recognized in case law the government's brief never addresses, "[r]outine costs for transactions which, from the bank's point of view, are completely normal do not satisfy th[e] standard" for new or increased risk of loss.  *United States v. Grass*, 274 F. Supp. 2d 648, 655 (M.D. Pa. 2003); *see also United States v. Esterman*, 135 F. Supp. 2d 917, 920 (N.D. Ill. 2001) (rejecting the government's contention that a bank was affected where the bank "was called upon

to do nothing more than to honor the authorizations that were wholly regular from the bank's perspective"); *United States v. Ubakanma*, 215 F.3d 421, 426 (4th Cir. 2000) ("mere utilization of the financial institution" is not enough).

Barclays's trades in anticipation of HP's unwind are exactly the kind of ordinary-course business activities that courts refuse to recognize as an "effect." Barclays is a market maker; buying and selling assets in the market is its core *raison d'etre*. As such, Barclays is **always** exposed to the market's "whims"; it would be impossible for Barclays to operate in this market *without* taking on trading risk. Moreover, this trading is not only a routine incident of Barclays's business operations; it is required by law. Under Section 619 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, commonly referred to as the Volcker Rule, Barclays must analyze and calculate the "reasonably expected near term demand of clients, customers, or counterparties," which dictates the appropriate level of the bank's proprietary trading activity. *See* 12 U.S.C. § 1851; 12 C.F.R. § 351.4(b)(2)(ii). As the Federal Reserve explained when adopting rules to implement the Volcker Rule, as a market maker Barclays is "required to routinely stand ready to purchase and sell one or more types of financial instruments," and must maintain inventory in order to meet, on an ongoing basis, the reasonably expected near-term demands of customers.[5] Simply put, Barclays's risk-taking behavior and trading activity were, and are, part of its daily routine and business model, not to mention mandated by financial regulators. Barclays thus did not assume the risk of these trades due to Mr. Bogucki's alleged misconduct, but rather as part of the normal course of its operations.

### B. The Investigation and Declination Cannot Establish an Effect on Barclays

The government further argues that Barclays was affected because it: (1) "was exposed to serious reputational risk"; (2) assumed legal expenses in order to "identify, investigate, and report" the alleged misconduct; and (3) was required to disgorge profits and pay restitution pursuant to the

---

[5] Press Release, Board of Governors of the Federal Reserve System, *et al.*, Final Rules to Implement the "Volcker Rule" (Dec. 10, 2013), *available at* https://www.federalreserve.gov/newsevents/pressreleases/files/bcreg20131210a3.pdf.

Declination. Opp. at 9-10. These are the only effects the government has theorized that can conceivably be traced – albeit indirectly – to the alleged misrepresentations to HP. Nevertheless, each theory fails as a matter of law.[6]

*First*, both common sense and case law foreclose the government's claim that the purported reputational harm associated with "alienat[ing] a large corporate client" (Opp. at 9) meets the standard for "affect[ing] a financial institution" under Section 3293(2). Multiple Courts of Appeals have made clear that such speculative considerations cannot serve as the basis for an "effect" on a financial institution. *United States v. Agne*, 214 F.3d 47, 52-53 (1st Cir. 2000) ("[T]he government suggested … that the bank was at risk of losing its client … as well as tarnishing its reputation. We cannot construe a criminal statute to sweep so broadly as to make one guilty of wire fraud for merely arousing these possibilities."); *Pelullo*, 964 F.2d at 216 (noting that under FIRREA an effect may be "unreasonably remote" if "the fraud was directed against a customer of the depository institution which was then prejudiced in its dealings with the institution").

*Second*, the argument that Barclays was affected because it incurred investigation-related legal expenses proves too much. Under this theory, Barclays would be "affected" for purposes of FIRREA by any fraud committed by an employee, even if totally unconnected to the bank. Even an investigation of wire fraud allegations *in no way* connected to the bank; *e.g.*, where a bank employee uses a bank-issued laptop to commit a fraud unrelated to the bank's business, would trigger FIRREA's ten-year statute. This is not the type of conduct Congress had in mind when it enacted FIRREA's extended statute of limitations. *Compare, e.g.*, *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d 779 (S.D.N.Y. 2011) (finding potential effect on a financial institution where a monetary payment was directly connected to a bank's

---

[6] The government contends that it is not applying the so-called "self-affecting theory" because that theory applies only when a bank affects itself, whereas Mr. Bogucki is "natural person." Given that a bank necessarily acts through natural people – and in light of the undisputed fact that Mr. Bogucki acted as an agent of Barclays for the benefit of the bank – this is a dubious distinction.

participation in a scheme); *with United States v. Carollo*, 2011 WL 3875322 (S.D.N.Y. Aug. 25, 2011) (finding no effect based on litigation expenses incurred in connection with alleged kickback arrangements).

Finally, the government is wrong to argue that Barclays's disgorgement pursuant to the Declination Agreement was a "direct consequence[] of [the] Defendant['s] charged conduct." *United States v. Ghavami*, 23 F. Supp. 3d 148, 163-64 (S.D.N.Y. 2014). The government attempts to manufacture a direct link by noting that the Declination "specifically states the conduct in question is 'as described in the indictment returned in *United States v. Bogucki*.'" Opp. at 10, n.4. But the government takes this statement out of context, as it is made solely in describing the government's investigation. Critically, the Declination contains no admission of wrongdoing by the bank, and the government's brief identifies none. It follows that the payment cannot be characterized as the direct result of any actions by Mr. Bogucki – absent an admission of wrongdoing, "there are many possible explanations" for the bank's decision to agree to the Declination. *Rubin/Chambers*, 831 F. Supp. 2d at 784 (while non-prosecution agreements established an effect cognizable under FIRREA, a settlement agreement did not, because of the absence of "an express admission of guilt"). Instead, the payment was caused by the government's own actions in extracting a sum from the bank as a condition of declination. Congress meant to deter "would-be criminals from including financial institutions in their schemes," *United States v. Serpico*, 320 F.3d 691, 694-95 (7th Cir. 2003), and it would pervert the statute to allow the government to trigger FIRREA simply by choosing to investigate a bank, even when it ultimately declines to pursue charges and fails to secure an admission of wrongdoing. The deterrence purpose of FIRREA is not served where the effect on the financial institution is a government contrivance. *See id.*

### C. Mere Status as Trading Counterparties is Insufficient to Allege an Effect on Financial Institutions A and B

With respect to Financial Institutions A and B, the government first argues that the Court should not scrutinize its claims at this stage, because the Superseding Indictment "states that Financial Institutions A and B were FDIC-insured and affected by the scheme," and as a result the

indictment "alleges the element sufficiently." Opp. at 12. But this motion does not raise a dispute about the facts, or challenge the sufficiency of the government's evidence. There is no dispute that Financial Institutions A and B are FDIC-insured. Nor is there any dispute that they were "actual counterparties with whom Barclays traded FX options." *Id*. But the government's allegations, taken as true, still fail as a matter of law to establish the requisite effect.

Although the government now attempts to distance itself from its previous assertion that its theory extends to all market participants, it has nevertheless alleged that Financial Institutions A and B were affected merely by price movements in a public market that the government claims resulted from Barclays's trading. If that argument is correct, then FIRREA's ten-year statute of limitations applies to *every* alleged wire fraud in *any* public market. *See* MTD Br. at 12-13. It is impossible to square the breadth of that theory with the requirement that the government establish a direct link between the alleged illegal conduct and the hypothesized effect. The government's claim to the contrary once again fails to grapple with the jurisprudence placing reasonable limits on what constitutes an "effect" on a financial institution.[7] *See, e.g., Mullins*, 613 F.3d at 1278; *Bouyea*, 152 F.3d at 195; *Pelullo*, 964 F.2d at 216. The Court should find that, as a matter of law, the allegations presented are insufficient to support an effect on Financial Institutions A and B.

The government also makes the disturbing claim that the Superseding Indictment charges manipulation of the FX options market, and that it was this manipulation that "affected" Financial Institutions A and B. Opp. at 12. The Superseding Indictment alleges no such thing. Instead, it alleges seven counts: a conspiracy to make false statements to, or conceal material facts from, HP,

---

[7] The government attempts to rebut the argument that "any wire fraud in any public market would 'affect[] a financial institution'" on its theory, MTD. Br. at 12, by claiming that "[n]ot every public market includes financial institutions as defined by the statute," and that "[w]ere the only other parties in the market hedge funds, pension funds, and private equity firms…the additional penalty and extended limitations period prescribed by FIRREA would not apply." Opp. at 13. That claim is bizarre. Public, over-the-counter markets exist specifically because large federally insured financial institutions act as market makers. There is, by definition, no public market in which hedge funds, pension funds, and private equity firms trade, but banks do not. As the government itself recognizes, that is why a large legal framework – which includes FIRREA – exists to insure and protect financial institutions. *See* Opp. at 13.

and six substantive counts based on discrete discussions between Mr. Bogucki and HP. Superseding Indictment ¶¶ 57, 59-60.  This is not a 10b-5 case, nor has the government alleged the elements of market manipulation.  There is no allegation that Barclays's FX trading – independent of its representations to or omissions from HP – was unlawful, nor could there be.  No law or regulation prohibited "pre-hedging" like that Barclays engaged in here in 2011, nor does any law or regulation prohibit it today.  Indeed, the trading at issue is not just independently legal, it is virtually required: it is part and parcel of a market maker's risk management and expected as a matter of industry best practice.  *See* FX Global Code, at 17, 54 (Updated Dec. 2017) ("Pre-Hedging is the management of the risk associated with one or more anticipated Client orders, designed to benefit the Client in connection with such orders and any resulting transactions.");[8] *cf.* CME Group, Block Trades, CME & CBOT RA1303-3R (Apr. 22, 2013).[9]

The government is either willfully ignoring its own charging instrument or attempting to muddy the waters of what it has charged, an overreach that speaks volumes either way.  But the government should be held to the actual charges in the Superseding Indictment, a plain reading of which shows that this case turns on allegedly fraudulent misrepresentations and omissions to HP.  The supposedly illegal conduct is therefore not Barclays's trading, which is not independently wrongful, but rather alleged misrepresentations and omissions about that trading.

In short, the government urges this Court to defer to a jury even though it fails as a matter of law to allege facts sufficient to support a viable legal theory for purposes of Section 3293(2).  This is the precise situation Rule 12(b) was designed to address.  This Court should dismiss the Superseding Indictment with prejudice.

---

[8] *Available at* https://www.globalfxc.org/docs/fx_global.pdf.

[9] *Available at* http://www.cmegroup.com/tools-information/lookups/advisories/market-regulation/CME_CBOT_RA1303-3R.html#pageNumber=1 ("Counterparties to a block trade are permitted to initiate trades to hedge or offset the risk associated with the block trade following the consummation of the block trade, including during the period preceding the public report of the block trade by the Exchange.").

### III. The Government Conceded that a Five-Year Statute Applies Here, Thereby Waiving Reliance on FIRREA's Extended Limitations Period

On the waiver issue, the government responds to a straw man. Of course the government did not waive the "right to seek a superseding indictment," nor did it waive anything "by superseding." Opp. at 14. Instead, the government waived its right to proceed under the statute of limitations provided by 18 U.S.C. § 3293(2). It did so by conceding, during the last round of briefing, that the five-year statute of limitations in 18 U.S.C. § 3282(a) applied to the wire fraud charges against Mr. Bogucki. The point is not that the government cannot supersede, but rather that it cannot cure its knowing waiver by doing so.

The government's agreement during the last round of briefing that Section 3282(a), rather than 3293(2), applied on the facts alleged against Mr. Bogucki, represents a waiver for two reasons. *First*, the government already knew of the grounds it now claims trigger the FIRREA limitations period. This is clear from the fact that the original indictment contained a forfeiture allegation under 18 U.S.C. § 982(a), which, as relevant here, permits asset forfeiture in connection with sentencing for a person convicted of wire fraud "affecting a financial institution." *Second*, the government could have raised Section 3293(2)'s longer statute of limitations on the prior motion to dismiss. The government is not required to include in the indictment facts rebutting affirmative defenses such as the statute of limitations. *See* MTD Br. at 13-14. Indeed, in several cases the government has relied on the FIRREA statute of limitations without charging "affecting a financial institution" in the indictment. *See, e.g.*, *Rubin/Chambers*, 831 F. Supp. 2d at 786-87; *Carollo*, 2011 WL 3875322, at 2. Together, those facts mean that the government intentionally relinquished a known right – a quintessential waiver. *See United States v. Olano*, 507 U.S. 725, 733 (1993).

The government's actions here in superseding had nothing to do with "prudence," Opp. at 14 n.5. Instead they represent a desperate attempt to revive an otherwise stale claim. The government thought it could safely rely on the tolling order it obtained pursuant to 18 U.S.C. § 3292, and therefore conceded the general applicability of the five-year limitations period. When this failed, the government fell back on Section 3293(2) and filed the Superseding Indictment in

an attempt to avoid its prior waiver.  On this basis alone, the Court should dismiss the Superseding Indictment as untimely.

**CONCLUSION**

    For the reasons set forth above, defendant Robert Bogucki respectfully requests that the Court dismiss the Superseding Indictment with prejudice.

Dated:  May 18, 2018                                         Respectfully submitted,

                                                   DEBEVOISE & PLIMPTON LLP

                                                 By     /s/
                                                      Sean Hecker
                                                      Derek Wikstrom

                                                 CLARENCE DYER & COHEN LLP

                                                 By     /s/
                                                      Nanci L. Clarence
                                                      Josh A. Cohen

                                                 Attorneys for Defendant Robert Bogucki