DAVID L. ANDERSON (CABN 149064)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JUSTIN D. WEITZ (N.J. Bar # 03766-2011)
BRIAN R. YOUNG (Ohio Bar # 0078395)

CHINHAYI COLEMAN CADET (CABN 194542)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, CA 94102-3495
    Telephone: (415) 436-7205
    Fax: (415) 436-7234
    Chinhayi.cadet@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>   v. <br> ROBERT BOGUCKI, <br>     Defendant. | Case No. CR-18-0021 CRB <br><br> GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO PROFFER REGARDING AUGUST TRADING |

Government's Reply to Defendant's Response to Proffer Regarding August Trading      18-CR-0021 CRB

## GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO PROFFER REGARDING AUGUST TRADING

If it as true, as the defendant writes, that "the government's Supplemental Proffer reaches a new low," then the government has set the bar quite high, because there are compelling reasons to admit the 12 minutes of audio that the government offers. Rather than a point-by-point rebuttal of the defendant's brief, this submission addresses three arguments that bear discussion. At the outset, the government wishes to emphasize that the evidence that it offers is extremely important because it goes to the central issue of the case: the defendant's intent. The defendant's filing devotes many words to characterizing the content of these calls. Rather than basing its ruling on the parties' spin on the import of the calls, the government respectfully submits that the Court should listen to the clips that the government offers before ruling. It's true that the government has submitted transcripts, but the cold record does not do this evidence justice – the Court needs to hear the defendant's voice to truly appreciate the probative value of these tapes.

*First*, the defendant argues that the conversations that the government offers do not evidence any nefarious conduct. But the government submits that the jury should be allowed to make this assessment – if the conversations are innocuous, as the defendant asserts, then nothing has been lost but twelve minutes of time. And if the conversations are innocuous, no prejudice is likely to result. Indeed, the defendant doth protest too much: his vigorous opposition to the admission of twelve minutes of audio belies his claim that the evidence is not probative.

The conversation marked as Exhibit 110A is probative because Trader-1 told the defendant hat he traded in a way calculated to conceal his conduct: "Then in goodness of my fucking heart, I'm the guy who gets him to buy fucking loads of pounds and then give me the pounds. Not even have to do a direct trade. So he's selling to me in the fix. <u>So it makes it look like he's just been dealing on with somebody else so that if anyone ever came to look at it, it would look like he's selling, and I'm just buying. So that we can turn around and say, why would he be selling if he knew all about it, yeah</u>." Trader-1 further told

Government's Reply to Defendant's Response to Proffer Regarding August Trading   18-CR-0021 CRB
1

the defendant that "I'm going to get in a lot of shit because I did tell him. I told him." The defendant responded "No you're not." This indicates that the defendant knew Barclays traders were frontrunning their client and had concocted a story to conceal their frontrunning. That he tolerated and covered it up speaks to his intent.

*Second*, the defendant disputes that this evidence will take twelve minutes to present and suggests that the government cannot prove misconduct without offering trading data pertinent to the trades at issue. The government does not need to offer data to prove this frontrunning because it doesn't need to in order for the evidence to be admissible. All it needs to do is play the tapes, in which both traders advise the defendant that they frontran HP's trading in August, and in which the defendant signals his approval of such conduct. The quotes replicated above, combined with the following statement uttered by the defendant, establish awareness of misconduct and its potential profitability without more: "I told Bagguley that you gave [Trader 2] the heads up in the eleventh hour and that he was able to make a million quid out of it. I told him that you gave him a heads up."

*Third*, the defendant argues that the evidence at issue does not impeach the deposition testimony of his supervisor, Michael Bagguley. The government's proposition here is simple. Mr. Bagguley suggested during his deposition that the defendant's bonus was not influenced by the profitability of this gigantic £6 billion trade (he admitted on cross-examination, however, that profitable trades increase the size of the "bonus pool," which would mean that more money would be available to pay bonuses). The audio files that the government offers defeat the notion that *Mr. Bogucki* believed that it was Mr. Bagguley's practice to dole out bonuses without regard to profitability. The call marked as Exhibit 110A captures the defendant saying: "Bagguley only cares about one thing, and that's the guy makes money . . ." Further, this statement speaks directly to the defendant's view of the incentives at Barclays and the need to earn money—*i.e.*, his motive.

Government's Reply to Defendant's Response to Proffer Regarding August Trading  18-CR-0021 CRB
2

Much ink has been spilled on this issue, in order to characterize the August trading in the light most favorable to each party. Ultimately, the issue is whether this small amount of evidence is probative of the defendant's intent, motive, and lack of mistake. In a case where intent is everything, the government submits that any such evidence is crucial to presenting its case. In the alternative, the government respectfully requests that the Court allow it to play the excerpts for the Court (without the jury present), so that the Court can consider the evidence in its original form.

Dated: February 19, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

ROBERT ZINK
Acting Chief, Fraud Section
Criminal Division

/s/
BRIAN R. YOUNG
JUSTIN D. WEITZ
Assistant Chiefs, Fraud Section

CHINHAYI COLEMAN CADET
Assistant United States Attorney