DAVID L. ANDERSON (CABN 149064)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JUSTIN D. WEITZ (N.J. Bar # 03766-2011)
BRIAN R. YOUNG (Ohio Bar # 0078395)

CHINHAYI COLEMAN CADET (CABN 194542)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, CA 94102-3495
    Telephone: (415) 436-7205
    Fax: (415) 436-7234
    Chinhayi.cadet@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-18-0021 CRB |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S TRIAL MEMORANDUM |
| v. | |
| ROBERT BOGUCKI, | |
| Defendant. | |

Government's Response to Defendant's Trial Memorandum
CR 18-0021 CRB

# GOVERNMENT'S RESPONSE TO DEFENDANT'S TRIAL MEMORANDUM

The government respectfully submits this response to the defendant's February 24, 2019, trial memorandum regarding the misappropriation theory of wire fraud. The government's theory is not novel, and does not tread new ground in criminal law. Rather, misappropriation is a well-established theory that, despite the defendant's repeated claims to the contrary, extends to the misuse of confidential business information to benefit any defendant, and is not limited to the context of securities law.

## I. Legal Background

In his filing, the defendant expressed concern that the government's misappropriation theory would unjustly extend insider trading law from securities trading into foreign exchange (FX) trading. But the defendant's assertion that misappropriation of confidential information is fraudulent only when the misappropriator uses that information to trade stocks – not options, foreign exchange, or other types of financial instruments – is completely inconsistent with the case law. As set forth below, the seminal case on misappropriation, *Carpenter v. United States*, 484 U.S. 19, 25 (1987), affirmed the defendant's conviction for violating the wire fraud statute, not the securities fraud statute, and the Court's opinion provides no indication that the outcome turned on the type of instrument that the defendant traded. Indeed, the appellate courts have regularly affirmed the convictions of defendants who misappropriate a victim's confidential information by using that information for purposes other than trading securities.

## II. Argument

Contrary to the defendant's assertion, the examples of *Carpenter* being applied outside the context of securities is manifold. Notably, in *United States v. Johnson*, Judge Nicholas Garaufis relied upon *Carpenter* in permitting the government to proceed on a misappropriation theory in a case in which the indictment alleged that the defendant, an FX trader, defrauded his counterparty during the course of transaction in which the defendant's bank sold foreign currency to that counterparty. *United States v. Johnson*, 16-cr-457, 2017 WL 5125770, at *3-4 (E.D.N.Y. 2007).

In *Carpenter*, a reporter for the *Wall Street Journal* gave advance notice to two stockbrokers of which stocks he intended to cover in his "Heard on the Street" column. Coverage of a particular stock in

Government's Response to Defendant's Trial Memorandum
CR 18-00021 CRB

1

that column had the potential to affect the price of that stock. *See* 484 U.S. at 22-23. The "official policy and practice" at the Journal was that the contents of the column were confidential prior to publication, and the reporter was "familiar" with that rule. *Id*. at 23. The stockbrokers bought or sold the stocks prior to the column's publication with the expectation of profiting on the movement in the stock's price resulting from the subsequent coverage of the stock column. In upholding the defendants' convictions for mail and wire fraud, the Supreme Court held that the confidential business information, such as the identity of the stocks to be featured in the upcoming column, "has long been recognized as property" that the Journal "had a right to decide how to use . . . prior to disclosing it to the public." *Id*. at 26.

The misappropriation theory that the government advances is nowhere near as novel as the defendant portrays it. Indeed, as the government will show through its second expert witness, this case involves the wrongful appropriation by the defendant and Barclays of Hewlett-Packard's confidential information to generate secret profits for Barclays in violation of the defendant's representations that Barclays was not "touching the market," would keep HP's information "quiet," and that Barclays maintained a "long" position as to Dollar-Sterling options (when in fact the bank had accumulated a significant short position that stood to profit from the traders' efforts to depress volatility). Although the defendant asserts otherwise, the gravamen of the mail and wire fraud charges in *Carpenter* was the wrongful appropriation of the Journals' confidential information, not how the information was subsequently used by the conspirators.[1] There is no principled basis for suggesting that *Carpenter* would have come out differently if the conspirators had used the Journal's confidential information to profit by trading on the FX market or in some other way.

Indeed, the appellate courts have sustained mail and wire fraud convictions under the misappropriation theory for fraudulent schemes in a variety of factual circumstances where the defendant used a victim's confidential information for purposes other than securities trading. *See United*

---

[1] The defendants in *Carpenter* were also charged separately with insider trading in violation of the securities laws. The second Circuit affirmed those convictions. *United States v. Carpenter*, 791 F.2d 1024 (2d Cir. 1986). The Supreme Court affirmed that aspect of this Court's decision by an equally divided vote. *See* 484 U.S. at 24.

Government's Response to Defendant's Trial Memorandum
CR 18-00021 CRB

*States v. Hager*, 879 F.3d 550, 554 (5th Cir. 2018) (employee fraudulently misappropriated employer's confidential pricing information); *United States v. Hedaithy*, 392 F.3d 580, 595-96 (3d Cir. 2004); *United States v. Poirier*, 321 F.3d 1024, 1030 (11th Cir. 2003) (county official misappropriated "confidential business information" by supplying the owner of a bond underwriting firm with competitor bid information); *United States v. Martin*, 228 F.3d 1, 16 (1st Cir. 2000) (misappropriation of trade secrets); *United States v. Dial*, 757 F.2d 163, 168-69 (7th Cir. 1985) (affirming conviction of commodity trader for "trading ahead" of a British Pounds futures order).

The defendant has suggested in prior briefing that cases applying misappropriation liability outside the context of equities trading are limited to situations in which an employee misused his employer's confidential information, but that isn't true either. In *Hedaithy*, the Third Circuit recognized that the substance of the Test of English as a Foreign Language (TOEFL) constituted "confidential information" of the test's administrator as the term is used in *Carpenter*. 392 F.3d at 594. In order to sit for the exam, test takes were required to sign a confidentiality agreement. The evidence showed that conspirators paid imposters to take the test in their stead. The panel affirmed the defendants' wire fraud convictions under a *Carpenter* theory because the imposters misused the test administrator's confidential information in violation of a promise of confidentiality. *Id*. at 595. Notably, the imposters were *not* the employees of the test administrator.

The defendant's assertion that this prosecution violates his due process rights also misses the mark. To comport with due process, a criminal statute must provide "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). The government will prove that the defendant made false statements to HP for the purpose of making money at HP's expense. Such a theory falls well within the traditional conception of fraud.

The defendant has generally claimed that the government is unable to establish a duty of trust and confidence. While the government has not concluded presenting its evidence, the government has

Government's Response to Defendant's Trial Memorandum
CR 18-00021 CRB

3

already produced enough evidence in the record to permit a rational juror to conclude that Barclays owed HP a duty of trust and confidence.

By September 28, when HP unwound the first tranche, Barclays' knowledge was unequal to any other market participant. At that point, not only did Barclays know the details of HP's option; it knew that the unwind had already begun, and that HP was planning to unwind further tranches. Even assuming that HP shared other material information with Deutsche Bank and BNP Paribas prior to the unwind—which the record does not support—there is no evidence in the record that HP shared any material confidential information with any bank besides Barclays between the unwind of the first tranche and the precipitous decline in volatility in the early hours of September 30.

It is that information which was so crucial, and which the defendant promised, again and again, would be kept quiet and confidential. The knowledge that HP would unwind the second tranche, combined with knowledge of the details of the option, put the defendant and Barclays in a unique position: they knew of an imminent market event before it happened and before it was public. This allowed them to trade in a way that could give Barclays a short position book, and then benefit from a decline in volatility which Barclays traders caused. This information plainly falls within the ambit of *Carpenter*: it was business information provided with an expectation of confidentiality.

### III. Conclusion

The government will introduce evidence in the coming days to demonstrate how Barclays employees under the defendant's supervision traded and what the effect of that trading was on the market. The government will further introduce evidence that the defendant intended such trading to manipulate the Bloomberg volatility and decrease the price that Barclays paid HP for the option. This evidence, coupled with the evidence in the record of how HP expected its information to be treated and

///
///
///
///

Government's Response to Defendant's Trial Memorandum
CR 18-00021 CRB

the defendant's explicit promises to handle it confidentially, is more than sufficient to establish a duty of trust and confidence.

Dated: February 26, 2019

    Respectfully submitted,

    DAVID L. ANDERSON
    United States Attorney

    ROBERT ZINK
    Acting Chief, Fraud Section
    Criminal Division

    /s/
    BRIAN R. YOUNG
    JUSTIN D. WEITZ
    Assistant Chiefs, Fraud Section

    CHINHAYI COLEMAN CADET
    Assistant United States Attorney

Government's Response to Defendant's Trial Memorandum
CR 18-00021 CRB